Gary M. Klinger (admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]


### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| *In re Kannact, Inc. Data Security Incident* | Lead Case No. 6:23-cv-1132-AA |


### PLAINTIFFS' UNOPPOSED MOTION FOR
### <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

LR 7-1 CERTIFICATION ......................................................................................... 1

MOTION ...................................................................................................................... 1

I. INTRODUCTION ................................................................................................... 1

II. FACTS AND PROCEDURAL HISTORY ............................................................ 2

III. SUMMARY OF SETTLEMENT ........................................................................ 3

IV. ADMINISTRATION OF THE SETTLEMENT .................................................. 4

V. LEGAL STANDARD ............................................................................................ 6

VI. ARGUMENT ....................................................................................................... 7

   A. The Settlement Satisfies Rule 23(a) ................................................................ 7

   B. The Settlement Satisfies All the Rule 23(e)(2) Factors .................................. 8

      1. The Class Was Adequately Represented ..................................................... 8

      2. The Settlement was Negotiated at Arm's Length ....................................... 9

      3. The Relief is Adequate under Rule 23(e)(2)(C) ......................................... 9

         i.   The Costs, Risks, and Delay of Trial and Appeal ................................ 10

         ii.   The Method of Distributing Relief is Effective ................................... 10

         iii.   The Terms Relating to Attorneys' Fees are Reasonable ...................... 11

         iv.   Any Agreement Required to be Identified Under Rule 23(e)(3) .......... 11

      4. The Proposed Settlement Treats Class Members Equally .......................... 11

   C. The Settlement Satisfies All of the *Bluetooth* Factors .................................. 12

      1. The Strength of Plaintiffs' Case ................................................................. 12

      2. Risk, Expense, Complexity, and Duration of Further Litigation ............... 12

      3. The Risk of Maintaining Class Action Status Through Trial .................... 14

4. The Amount Offered in Settlement ........................................................................ 14

5. The Extent of Discovery Completed and the Stage of the Proceedings ................ 15

6. The Experience and Views of Counsel .................................................................. 15

7. Governmental Participants ..................................................................................... 16

8. The Positive Reaction of the Class Favors Final Approval ................................... 16

9. Lack of Collusion Among the Parties .................................................................... 17

VII. NOTICE SATISFIED DUE PROCESS AND RULE 23 ........................................ 17

VIII. CONCLUSION ........................................................................................................ 19

CERTIFICATE OF COMPLIANCE ............................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                      **<u>Page</u>**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................ 7

*Barker v. CDR Maguire, Inc.*,
   No. 6:21-cv-01720-AA, 2022 WL 1799812 (D. Or. June 2, 2022).......................... 17

*Calderon v. Wolf Firm*,
   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) .................. 15

*Chester v. TJX Cos.*,
   No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ..................... 12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 7

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .............................. 12

*Doe v. Mindgeek United States Inc*.,
   702 F. Supp. 3d 937 (C.D. Cal. 2023) ....................................................................... 8

*Espinosa v. United Student Aid Funds, Inc.*,
   553 F.3d 1193 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ..................................... 18

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................... 16

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)........................ 13

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ...................................................................................... 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010).................. 13

*Hanlon v. Chrysler Corp*.,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................... 7, 8, 11, 12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................... 16

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017), *rev'd in part*, 928 F.3d 42 (D.C. Cir. 2019) ...................... 13

*Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*,
   544 U.S. 1044, (2005) ........................................................................................................... 9

*Linney v. Cellular Alaska P'ship*,
   151 F. 3d 1234 (9th Cir 1998) .............................................................................................. 15

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................................................. 17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 10, 16

*Norton v. Maximus, Inc.*,
   Case No. 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) .............................. 16

*Paz v. AG Adriano Goldschmeid, Inc.*,
   No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ........................... 14

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................................................. 17

*Rausch v. Hartford Fin. Servs. Grp.*,
   No. 01-cv-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) ............................................ 18

*Smith v. Triad of Ala., LLC*,
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017), *on reconsideration
   in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017) ........................................................ 14

*Solano v. Kroger Co.*,
   No. 3:18-cv-01488-AR, 2024 U.S. Dist. LEXIS 160116 (D. Or. July 16, 2024) ...................... 9

## **Other Authorities**

Manual For Complex Litigation (Third) § 30.42 (1995) ................................................................ 9

Newberg on Class Actions § 11.41 (4th ed. 2002) ...................................................................... 7

## **Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 8, 17

Fed. R. Civ. P. 23(a) ........................................................................................................... 6, 7

Fed. R. Civ. P. 23(b) ................................................................................................................ 6

Fed. R. Civ. P. 23(c) .......................................................................................................... 4, 18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 17

Fed. R. Civ. P. 23(e) .............................................................................. 6, 9, 17

Fed. R. Civ. P. 23(e)(2) ......................................................................... 6, 7, 8

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................ 8, 9

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................... 11

Fed. R. Civ. P. 23(e)(3)......................................................................... 6, 11

**LR 7-1 CERTIFICATION**

Defendant, Kannact, Inc., does not oppose the relief sought in this motion.

**MOTION**

Plaintiffs Terry Dukes, Ann Fongheiser, and Alan White, the Court-appointed Class Representatives, respectfully move the Court for an order:

1. Granting final approval of the Parties' Settlement Agreement;

2. Certifying the class for settlement purposes;

3. Granting Plaintiffs' request for an attorneys' fee award in the amount of $233,333 and reimbursement of litigation costs and expenses totaling $18,292.53, as well as Service Award Payments of $1,500 to each of the Plaintiffs;

4. Directing EisnerAmper to distribute all funds or amounts pursuant to the Settlement Agreement or by Court order, including payments to Class Members, Class Representatives, and Class Counsel; and

5. Dismissing this case.

In support of this motion, Plaintiffs submit the following memorandum and the Declaration of Ryan Aldridge Regarding Notice and Administration.

**I. INTRODUCTION**

On August 21, 2024, the Court granted preliminary approval of the Settlement between Plaintiffs and Defendant Kannact, Inc. ("Kannact" or "Defendant") and ordered that notice be given to the Class. Doc. 34.The Settlement provides a favorable result for the Settlement Class in the form of a $700,000.00 non-reversionary Settlement Fund for the benefits of Plaintiffs and Settlement Class Members.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—only after an extensive investigation and hard-fought, arm's-length negotiations, including

a full day mediation. Although Plaintiffs believe in the merits of their claims, Defendant denies all charges of wrongdoing or liability. Plaintiffs' claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and Plaintiffs believe that the Settlement reached by the parties is the best settlement that could be achieved.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class as set forth in the Settlement Agreement. Individual Notice was provided directly to Settlement Class Members via email or first-class mail. Direct Notice reached 86.59% of the Class, easily meeting the due process standard. *See* Declaration of Ryan Aldridge Regarding Notice and Administration ("Admin Dec."), attached hereto as **Exhibit 1**, ¶ 15. The Notice was written in plain language, providing each Settlement Class Member with information on how to make a claim, how to opt-out, and how to object to the Settlement. *Id*. Exhibit B. The response by Class Members to the Settlement has been overwhelmingly positive, as no Class Member out of the 92,234 who have been notified has sought to be excluded from the Settlement, and no Class Member has filed any objection to the Settlement and roughly 4.9% of the Class have submitted a Claim (*Id*. ¶¶ 16, 17-18).

The Court previously granted preliminary approval in this matter. Doc. 34. Plaintiffs now respectfully request that the Court finally approval of the Settlement to fully effectuate the Parties' Settlement and permit the Settlement Administrator to distribute the Settlement benefits to the Settlement Class.

## II. FACTS AND PROCEDURAL HISTORY

In the interest of efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate, Plaintiffs' Unopposed Motion for Preliminary

Approval of Class Action Settlement and Memorandum in Support filed on May 16, 2024. Doc. 30.

### III. SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the Class provides a $700,000 non-reversionary Settlement Fund, from which class members may make a claim for the following benefits:

(a)    <u>Cash Award</u>. Settlement Class Members who submit a valid and timely Claim Form may elect a claim to receive a payment (a "Cash Award"). The cash awards for all valid claimants shall be a *pro rata* share of the "Post Loss Payment Net Settlement Fund," which is effectively the remainder of the Settlement Fund after payment of: the cost of notice and administration; any attorneys' fees, expenses, and service awards approved by the Court; the cost of Credit Monitoring and Insurance claimed by Class Members, and; approved Documented Loss Payments. Settlement Agreement ("S.A.") Doc. 30-2 Ex. 1. ¶¶ 2.2(a), 2.4. The estimated Cash Award as of the date of this filing is $79.26. Admin Dec. ¶ 16.

(b)    <u>Documented Loss Payment</u>. In the event a Settlement Class Member does not elect a Cash Award, the Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must submit an attestation regarding any actual and unreimbursed Documented Loss, and reasonable documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. S.A. ¶¶ 2.2(b).

(c)    <u>Credit Monitoring and Insurance Services</u>. Each Settlement Class Member who submits a valid and timely Claim Form may elect to receive three (3) years of Credit Monitoring and Insurance Services ("CMIS") regardless of whether they also make a claim for a Settlement Payment pursuant to Paragraph 2.2. The CMIS will have an enrollment period of twelve (12)

months after the enrollment codes are sent to Class Members claiming this benefit. The CMIS will include the following services to be provided to each Settlement Class Member who submits a valid and timely Claim Form and elects the CMIS: (i) up to $1 million dollars of identity theft insurance coverage; (ii) three bureau credit monitoring providing notice of changes to the Settlement Class Members' credit profile; (iii) alerts for activity including new inquiries, new accounts created, change of address requests, changes to public records, postings of potentially negative information, and other leading indicators of identity theft; (iv) customer care and dedicated fraud resolution agent; (v) comprehensive educational resources; and (vi) extended fraud resolution.

## IV. ADMINISTRATION OF THE SETTLEMENT

This Settlement was administered by EisnerAmper, a company which specializes in class action settlement administration *See* Admin Decl. ¶ 1. As outlined in detail in the Settlement Administrator's supporting declaration, the notice plan and its execution satisfied all the requirements of Rule 23 (c). On June 18, 2024, Counsel for Defendant provided EisnerAmper with the Class List containing 129,430 records of potential Settlement Class members. *Id*. ¶ 7. Upon receipt of the Class List, EisnerAmper determined the file contained 106,516 unique records, 94,401 records contained sufficient contact information to attempt mailing. *Id*. EisnerAmper executed skip tracing on the 12,115 records with incomplete address information where possible, and obtained contact information for an additional 772 Settlement Class Members. *Id.* Prior to the mailing, all mailing addresses were checked against the National Change of Address (NCOA) database maintained by the United States Postal Service ("USPS"). In addition, the addresses were certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code and verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses. *Id*. ¶ 9.

On or before September 20, 2024, EisnerAmper mailed the Short Form Notice ("Short Notice") to 95,173 Settlement Class Members with complete mailing information. EisnerAmper also executed supplemental mailings for 4,360 Settlement Class Members for which the initial Short Form Notice was not deliverable but for which EisnerAmper was able to obtain an alternative mailing address through (1) forwarding addresses provided by the USPS, (2) skip trace searches using the LexisNexis third-party vendor database, or (3) requests received directly from Settlement Class Members. *Id.* ¶ 10. Through the Notice procedures outlined above, EisnerAmper attempted to send direct notice to 95,173 (89.35%) Settlement Class Members. As of January 2, 2025, the Notice Program reached a total of 92,234 (86.59%) of Settlement Class Members. *Id.* ¶ 15.

On September 20, 2024, EisnerAmper published the Settlement Website, www.KannactDataSettlement.com. Visitors to the Settlement Website can download the Long Form Notice (English & Spanish), the Claim Form, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, the Unopposed Motion for Preliminary Approval, Orders of the Court, and other relevant documents.   *Id.* ¶ 12. Visitors were also able to submit claims electronically, find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Settlement Administrator. As of January 2, 2025, the Settlement Website received 15,925 unique visits. *Id.* EisnerAmper also established a dedicated toll-free telephone number, 1-844-755-4754, which is available twenty-four hours per day. Settlement Class Members can call and interact with an interactive voice response system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id.* ¶ 13. Finally, EisnerAmper established an Email address, info@KannactDataSettlement.com, to provide an additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support. *Id.* ¶ 14.

## V. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rules of Civil Procedure Rule 23 (e), under which a class action may not be settled without final approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. Doc. 34. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Doc. 30), this Court should certify the class for purposes of final approval of the settlement.

Next, for a settlement to be approved under Rule 23 (e)(2), the Court must determine that the settlement is fair, adequate, and reasonable. In making this determination, the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23 (e)(3); and

(D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. Rule 23(e)(2).

Fed. R. Civ. P. Rule 23(e)(2)

In addition to the Rule 23(e)(2) factors, when evaluating a class action settlement courts in the Ninth Circuit look to nine factors referred to as the "*Bluetooth* Factors": (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

## VI. ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). Here, with a strong settlement that enjoys robust support from the Settlement Class, and to which there is no opposition, the Court should grant final approval to this settlement.

### A.    The Settlement Satisfies Rule 23(a)

When assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23(a). *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Those requirements are numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

As set forth in Plaintiffs' Motion for Preliminary Approval, each of these requirements is easily met here. Doc. 30. In granting preliminary approval, the Court preliminarily certified the

Settlement Class, implicitly finding that the Class satisfies all Rule 23 requirements. Nothing has changed since then that undermines this preliminary class certification. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for Settlement purposes.

Specifically, Plaintiffs request this Court find that the Rule 23(e)(2) factors were satisfied including that the Class was adequately represented by Class Representatives and Class Counsel, that the Settlement was negotiated at arm's-length, that the relief is adequate under Rule23(e)(2)(c), that the proposed Settlement treats class members equally, and the *Bluetooth* Factors are satisfied here. Further, Plaintiffs request this Court find the Notice program was adequate and complied with the requirements of Rule 23.

### B. The Settlement Satisfies All the Rule 23(e)(2) Factors

#### 1. The Class Was Adequately Represented

"To satisfy the adequacy requirement, Plaintiff must show that she and her counsel will fairly and adequately represent the class." *Doe v. Mindgeek United States Inc*., 702 F. Supp. 3d 937, 947 (C.D. Cal. 2023) (granting contested class certification motion). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the Class Representatives have the same interests as all other Settlement Class Members because they are asserting the same claims and share the same injuries. *Mindgeek United States Inc*, 702 F. Supp. 3d at 947 ("because Plaintiff's claims are consistent with those of the class members, she has every reason to vigorously pursue those claims and fairly and adequately represent the class"). As detailed in Class Counsel's resume, they have many years of experience

representing plaintiffs in class action litigation, and especially in the area of data breach litigation. Dkt. 30-1, Ex. 2 (Resumes of Class Counsel). The record shows Class Counsel worked diligently to bring this case to resolution, and no Settlement Class Member objected to Class Counsel's or Class Representatives' adequacy. *See Solano v. Kroger Co*., No. 3:18-cv-01488-AR, 2024 U.S. Dist. LEXIS 160116, at *28 (D. Or. July 16, 2024) (finding that the adequacy prong was satisfied where counsel worked diligently on behalf of the class and no party objected to their adequacy).

### 2. The Settlement was Negotiated at Arm's Length

The negotiations in this matter were hard fought, involved experienced mediator, Hon. Wayne Andersen (Ret.) of JAMS, and occurred at arm's length. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044, (2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (quoting Manual For Complex Litigation (Third) § 30.42 (1995)). This deference reflects the knowledge that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 3. The Relief is Adequate under Rule 23(e)(2)(C)

The relief offered to Class Members in the proposed Settlement, *i.e.,* reimbursement for out of pocket losses, a *pro rata* cash distribution, and credit monitoring services, addresses the types of repercussions and injuries arising from the Data Security Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have significant experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such

experienced counsel's judgment. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

### i.    The Costs, Risks, and Delay of Trial and Appeal

As outlined in the Preliminary Approval Motion and Motion for Attorneys' Fees, Plaintiffs faced significant risks and additional litigation costs should they have continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion to dismiss, motion for class certification, motions for summary judgment, and Daubert motions on damages methodologies, among other motions. Second, if Plaintiffs prevailed against a motion to dismiss, and/or on a motion for class certification, successfully defeated all the other objections and motions Defendant filed, and proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members are eligible to receive compensation now. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

### ii.    The Method of Distributing Relief is Effective

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members laying out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim. Admin Decl. ¶ 8 at Exs. B, C.

Noticing the Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by email and direct mail, in the form of the Short Form postcard notice. This direct mail notice reached approximately 86.59% of the Class. *Id*. ¶ 15. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief is both efficient, effective and fair, and the proposed Settlement is adequate under this factor.

### iii.    The Terms Relating to Attorneys' Fees are Reasonable

On November 5, 2024, Class Counsel requested, attorneys' fees in the amount of $233,333 (which represents 33.3% of the Settlement Fund) and expenses in the amount of $18,292.53. For reasons discussed further therein, these requests are fair and reasonable and weigh in favor of final approval of the Settlement.

### iv.    Any Agreement Required to be Identified Under Rule 23(e)(3)

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement.

### 4. The Proposed Settlement Treats Class Members Equally

The Settlement Class Members are treated equitably because they all have similar claims arising from the same Data Security Incident, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement, including compensation for Out-of-Pocket Losses or a *pro rata* cash payment. Accordingly, the factors under Rule 23(e) support final approval. As discussed below, the *Bluetooth* factors are similarly satisfied.

**C.    The Settlement Satisfies All of the *Bluetooth* Factors**

**1. The Strength of Plaintiffs' Case**

Plaintiffs believe they have a strong case for liability. As described in Plaintiffs' Motion for Preliminary Approval, Plaintiffs believe their claims are viable and that they have a good chance of proving that Defendant's data security was inadequate, which could lend itself to a finding that Defendant was liable under at least some of the theories Plaintiffs pled in their complaint. Even so, Plaintiffs acknowledge their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors final approval of the settlement.  *Id.*

**2. Risk, Expense, Complexity, and Duration of Further Litigation**

Although Plaintiffs believe their case has merit, they recognize that all cases are subject to substantial risk. This case involves: a proposed class of approximately 109,210 individuals (each of whom, Kannact has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant.

And, even though nearly all class actions involve a high level of risk, expense, and complexity, this is an especially complex class in an especially risky arena. As one federal district

court observed in finally approving a settlement with similar class relief: Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."). Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *rev'd in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a trial setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Moving forward, Class Counsel would face numerous obstacles which could impede the successful prosecution of these claims at trial and in an eventual appeal—resulting in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmied, Inc.*, No.

14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors final approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the Court has not certified any class treatment of this case. Absent settlement, class certification in consumer data breach cases has only occurred in a few cases. *See, e.g., Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15 (M.D. Ala. Mar. 17, 2017), *on reconsideration in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). Even when certification is granted, there are appeals. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 890 (11th Cir. 2023) (vacating class certification in part and remanding for addition analysis on the predominance element). While certification of additional consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### 4. The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data security litigation generally and this litigation specifically, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of out-of-pocket expense reimbursements, *pro rata* cash payments, credit monitoring and identity theft insurance services, and substantial improvements to the overall security of Defendant's systems and environments.

When viewed in relation to other data breach settlements from around the country, the instant Settlement represents a strong result for the Settlement Class because the benefits it offers to the Settlement Class Members are in line with, or exceed, other comparable data breach settlements. Indeed, this settlement is a strong result for the Class, and as discussed herein is in

line with other approved settlements in cases involving data incidents of similar scope. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face pursuing individual claims, and the likelihood that they might be unaware of their claims, this factor favors final approval.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Kannact and the Data Security Incident—including publicly available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident to its customers. The Parties also informally exchanged non-public information concerning the Data Security Incident and the size of the Class in order to have an understanding of the scope of this action in settlement discussions. Accordingly, the litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6. The Experience and Views of Counsel

Class Counsel have substantial experience litigating complex class cases of various types, including data-related cases such as this one. *See* Doc. 30-1 at Ex. 2 (resumes of Class Counsel). Having worked on behalf of the putative class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, Case No. 1:14-0030 WBS, 2017 WL

1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221

F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. Governmental Participants

There is no governmental participant in this matter, making this factor neutral.

### 8. The Positive Reaction of the Class Favors Final Approval

The reaction of the Settlement Class to this Settlement is largely positive. The deadline to

object or opt out of the settlement was November 19, 2024. As of January 2, 2025, no Class

Member sought to be excluded from, or object to, the Settlement. *See* Admin Decl. ¶¶ 17-18. In

contrast, as of January 2, 2025, the Settlement Administrator received 4,559 Claims from Class

Members seeking to receive Settlement benefits – a 4.9% Claims rate. *Id*. ¶ 16.

"It is established that the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class settlement action are

favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 529 (C.D. Cal. 2004); 4 Newberg on Class Actions § 11:48 ("Courts have taken the position

that one indication of the fairness of a settlement is the lack of or small number of objections.").

The fact that no Class Member even tried to submit an objection reflects a highly positive response

by the Settlement Class. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW

EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (finding that only one objector to

settlement and fee request represented an "overwhelmingly positive" response from the class of

24,358 members); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act

(FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and

objections indicates that the class generally approves of the settlement."). "[T]he fact that the

overwhelming majority of the class willingly approved the offer and stayed in the class presents

at least some objective positive commentary as to its fairness." *id*. at 1025–26 (noting favorably that less than 0.1% of class members opted out).

### 9. Lack of Collusion Among the Parties

The Parties negotiated a substantial, multifaceted Settlement, as described above. Class Counsel and Kannact's counsel are well-versed in handling data-related class actions such as this one and fully understand the values recovered in similar cases, and both parties were provided with ample amounts of informal discovery to better understand the posture and value of this instant action. Furthermore, the parties reached the settlement only after a full-day mediation, and months of negotiations. Therefore, the Court can be assured that the negotiations were not collusive.

### VII. NOTICE SATISFIED DUE PROCESS AND RULE 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P 23 (e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties utilized direct mail notice for those unreachable by electronic mail, which has been approved in other class actions in this District. *See Barker v. CDR Maguire, Inc.*, No. 6:21-cv-01720-AA, 2022 WL 1799812 at *12 (D. Or. June 2, 2022) ("The Court authorizes Plaintiffs, or a third-party class administrator if one is engaged, to distribute by regular mail and/or electronic mail, notice of this action to prospective collective action members[.]"). The Notice

adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class members to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

As outlined in detail in the Settlement Administrator's supporting declaration, the notice plan and its execution satisfied all the requirements of Rule 23(c). Robust efforts were made to determine forwarding addresses for returned mail, and to re-mail notices to good addresses via US mail. Admin. Decl. ¶ 8. After mailings, EisnerAmper reasonably believes that notice reached 92,234 Settlement Class Members which equates to a reach rate of the direct mail notice of approximately 86.59%. *Id*. ¶ 15. This reach exceeds other court-approved, best practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *See Rausch v. Hartford Fin. Servs. Grp.,* No. 01-cv-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) (Finally approving Class Action Settlement with notice reaching 92% of the Class.)

Thus, Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

# VIII. CONCLUSION

Plaintiffs negotiated a fair, adequate and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant benefits. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 30) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (Doc. 36), Plaintiffs respectfully request this Court enter the proposed Final Approval Order submitted herewith finally certifying the Settlement Class, appointing Settlement Class Counsel and Plaintiffs as representatives for the Class, and granting final approval of this Settlement.

DATE: January 8, 2024                    Respectfully Submitted,

By:    */s/ Gary M. Klinger*
Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
gklinger@milberg.com

Kim D. Stephens (OSB #030635)
Kaleigh N. Boyd (admitted *pro hac vice*)
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: 206-682-5600
Facsimile: 206-682-2992
kstephens@tousley.com
kboyd@tousley.com

Nickolas J. Hagman (admitted *pro hac vice*)
**Cafferty Clobes Meriwether & Sprengel LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
nhagman@caffertyclobes.com

Tyler J. Bean (*pro hac vice* anticipated)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (929) 677-5144
tbean@sirillp.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,466 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Gary M. Klinger*
Gary M. Klinger

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the U.S. District Court of Oregon via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matter.

*/s/ Gary M. Klinger*
Gary M. Klinger